UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WILLIAM SHIRBACK | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| v. | : | 3:06-cv-995 (JCH) |
| | : | |
| THERESA C. LANTZ, ET AL. | : | |
| | : | |
| Defendants. | : | MARCH 28, 2008 |

**RULING RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. NO. 19)**

**I.     INTRODUCTION**

Plaintiff, William Shirback, brings this action pursuant to 18 U.S.C. § 1983 claiming violation of his Fourth, Eighth, and Fourteenth Amendment rights by defendants Theresa C. Lantz, the Connecticut Department of Correction, the University of Connecticut Heath Center, the New Haven Correctional Facility ("NHCC"), Correction Officers John Doe 1 though 8 ("John Doe Defendants"), Robert Correa, and David N. Strange (collectively "defendants"). Shirback's claim arises out of medical treatment he received while in custody of the Connecticut Department of Corrections at the New Haven Correctional Facility. All of the defendants moved for summary judgment. See Defendants' Motion for Summ. Judg. at 1 (Doc. No. 19). Shirback stipulated to dismissing the claims against the State entities, Strange, and the remaining individual defendants in their official capacities. See Stipulations (Doc. Nos. 35 and 36). Therefore, the court will consider the Motion for Summary Judgment as to the remaining claims against Lantz, Correa, and the John Doe defendants in their individual capacities.

## II. FACTS[1]

Shirback's incarceration at NHCC began June 23, 2007, following a sentence of less than one year. On June 28, 2003, medical staff at NHCC attended to Shirback regarding his arthritis. Defendants contend that Shirback was again seen by a nurse for his arthritis on July 9, 2003 and did not complain of abdominal pain at that time. See Def.'s 56(a)(1) Stat. of Mat. Facts ("Def.'s 56(a)(1) Stat.") at ¶ 8. Shirback denies that he was seen by a nurse on that day. See Pl.'s 56(a)(2) Stat. of Mat. Facts ("Pl.'s 56(a)(2) Stat.") at ¶ 8.

Shirback contends that he began to complain to correction officers of stomach pain on July 5, 2003. See Pl.'s 56(a)(2) Disputed Issues of Mat Fact ("Pl.'s 56(a)(2) Disp. Issues") at ¶ 1. He states that he repeatedly requested medical attention between July 5, 2003 and July 13, 2003 as his symptoms worsened and was denied it. See id. at ¶¶ 3, 6, 8, and 10. When he reported his symptoms to the guards, they told him to "suck it up" and told his wife that an inmate had to "hit the floor" before they would get medical attention. See id. at ¶¶ 7 and 9. Shirback states that he collapsed at the guard's desk on July 12, 2003, and was taken to the infirmary. See Shirback Affidavit at ¶¶ 4 and 11 (Doc. No. 31).

At about 4:30 p.m. on July 12, 2003, Shirback was brought to the medical unit of NHCC complaining of severe abdominal pain. A nurse gave him Tylenol and took his vital signs at that time. At that time, Shirback reported to the nurse that he had experienced body aches and chills for several days; defendants state he reported these

---

[1] The facts are those agreed to by the parties in their factual statements made pursuant to Local Rule of Civil Procedure 56(a) unless otherwise noted.

symptoms going back for three days (see Pl.'s 56(a)(1) Stat. at 13) and Shirback states he reported these symptoms going back about seven days (see Shirback Affidavit at ¶ 12).

Shirback was transferred to the John Dempsey Hospital Emergency Room by 10:00 p.m. on July 12, 2003. His doctors there determined that he had perforated diverticulitis and performed surgery to correct it. Following his stay in the hospital, Shirback was transferred to Osborn Correctional Institution ("OCI"), where he was incarcerated until January 22, 2004.

Defendant Robert Correa is the Warden at NHCC, and held this position during all times relevant to Shirback's claims. Correa does not recall receiving any complaints from Shirback regarding his treatment at NHCC and a review of his files did not reveal any such complaints. When Correa receives a complaint about medical care from an inmate, he contacts the medical staff for a "report as to whether the medical needs are being addressed." Def.s' 56(a)(1) Stat. at ¶ 27. As the Warden of NHCC, Correa issues "general post orders," which state the duties and responsibilities of NHCC staff. These general post orders require all correctional staff to report medical emergencies immediately to their supervisor and to refer inmates for medical assistance when needed.

Defendant Theresa Lantz serves as the Commissioner of the Connecticut Department of Correction, and held this position during all times relevant to Shirback's claims. Lantz does not recall speaking with anyone regarding Shirback's health or treatment at NHCC, nor does a review of her files reveal any correspondence from Shirback. When Lantz receives an inmate complaint regarding health services, she

refers it to the Director of Health and Addiction Services for the Department of Correction for investigation. The Department of Corrections' training program requires correctional staff to receive extensive pre-service and annual in-service training.[2] Part of that training includes learning how to recognize and respond to serious illness including the need to notify the facility medical unit.

## III. STANDARD OF REVIEW

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgement as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). Once the moving party has met its burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor in order to defeat the motion. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton, 202 F.3d at 134. "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the

---

[2]The court notes that Shirback admits that these policies exist, though he denies that they are effective at training officers or that they were followed in this instance. See Pl.'s 56(a)(2) Stat. at ¶¶ 50, 51, and 53.

4

basis of the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

## IV. DISCUSSION

### A. John Doe Defendants

Defendants argue that the claims against the John Doe defendants must be dismissed pursuant to Federal Rule of Civil Procedure 4(m) for failure to timely serve the complaint upon them. See Def.'s Mem. in Supp. of Mot. for Summ. Judg. ("Pl.'s Mem.") at 13-4. Rule 4(m) provides that if "service of the summons and complaint is not made upon a defendant within 120 days of the filing of the complaint," the court should dismiss the action as to that defendant. FED.R.CIV.P. 4(m). Shirback filed his complaint on June 27, 2006; therefore, the time for service upon the John Doe defendants has clearly elapsed and the claims against those defendants are dismissed.[3] See Complaint (Doc. No. 1).

### B. Lantz and Correa in their Individual Capacities

Generally, "[a] supervisor may not be held liable under section 1983 merely because his subordinate committed a constitutional tort." Poe v. Leonard, 282 F.3d 123, 140 (2d Cir. 2002)(citing Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999)). This is because, in part, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Provost v. City of Newburgh, 262 F.3d 146, 154 (2d Cir. 2001). However, a supervisor may be found to

---

[3]The court notes that Shirback did not offer any argument to oppose defendants' argument that the claims against the John Doe defendants must be dismissed for failure to serve. See Def.'s Mem. at 13-5; Pl.'s Mem. in Opp. (Doc. No. 28).

be personally involved in a subordinate's action when he (1) directly participated in the action; (2) failed to remedy the wrong after learning of the violation through a report or appeal; (3) "created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue;" or (4) "was grossly negligent in managing subordinates who caused the unlawful condition or event." Williams v. Smith, 781 F.2d 319, 323-4 (2d Cir. 1986).

A supervisor is grossly negligent or deliberately indifferent when he "knew or should have known" that there was a high degree of risk that a subordinate would violate someone's rights but "either deliberately or recklessly disregarded that risk by failing to take action that a reasonable supervisor would find necessary to prevent such a risk, and that failure caused a constitutional injury". Poe, 282 F.3d at 141 (collecting cases that set standard for when supervisor can be liable for failing to "inquire about his subordinates or into their actions"); see also Provost, 262 F.3d at 155 (no liability for gross negligence absent evidence supervisor "knew or should have known" of illegality); Wright v. McMann, 460 F.2d 126, 135 (2d Cir. 1972)(evidence showed defendant liable because he "knew or should have known" of subordinates' constitutional violations). In order to be liable under section 1983 for failing to inquire about his subordinates or into their actions, a supervisor "must first have been on notice that his subordinate was prone to commit some unconstitutional or unacceptable behavior." Poe, 282 F.3d at 141. "Such notice could be actual (for example, awareness of prior deprivations in a related context), or it could be constructive (for instance, notice arising from a preexisting duty)." Id. (internal citations omitted).

Defendants argue that, assuming arguendo that Shirback's constitutional rights

6

were violated, Lantz and Correa cannot be liable for any violation because they were not personally involved.  See Def.s' Mem. at 5-12.  As to Lantz's involvement, defendants point to uncontested evidence that she does not recall speaking to anyone about Shirback's illness or treatment, that she only became aware of them with the filing of the complaint in this case, that she received no correspondence from Shirback regarding his treatment, and that the DOC has policies, orders, and training in place "to ensure inmate access to medical care."  Def.'s Mem. at 8-10.  As to Correa's involvement, defendants point to uncontested evidence that Correa does not recall receiving any complaints from Shirback regarding his treatment, that his records show no correspondence from Shirback, and that NHCC policy requires staff to refer inmates to medical care when needed.  See id. at 10-12.

Shirback argues that Correa and Shirback were personally involved because they were "grossly or deliberately indifferent by failing to adequately train, supervise and discipline the correctional officers in the performance of their official duties."  Pl.'s Mem. at 3.[4]  In support of this position, Shirback recounts how he asked for, and was denied, medical treatment until he collapsed and was taken to the hospital.  See id. at 3-4.

---

[4]The court notes that Shirback's Complaint states a claim against Lantz and Correa both for failure to provide adequate medical care (Count One) and supervisory liability for failure to provide adequate medical care (Count Two).  See Complaint at 9.  The standard for supervisory liability includes liability where a supervisor "directly participated" in the alleged violation.  See e.g. Williams, 781 F.2d at 323-4 (2d Cir. 1986).  Furthermore, Shirback makes no differentiation between these claims in his opposition and defends his claims only under a theory of supervisory liability.   Therefore, the court will assume that Count One of the Complaint as to Shirback and Lantz is redundant of Count Two, and is therefore dismissed.

The court further notes that Shirback made reference to correction officers acting under a "policy" in discussing supervisory liability (see Pl.'s Mem. at 4 and 9), but does not specifically argue that Shirback and Correa were personally involved under a theory that they created "a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue."  Williams,781 F.2d at 323-4 (2d Cir. 1986).

7

Shirback summarizes his argument for supervisory liability concisely: "[his] medical condition was serious, and was ignored." Id.

Resolving all ambiguities and drawing all inferences in favor of Shirback, the court concludes that Shirback has proffered no evidence from which a reasonable jury could conclude that Lantz and Correa were personally involved in any violation of Shirback's right to adequate medical treatment. Shirback essentially argues Lantz and Correa are liable under the principle of res ipsa loquitur, or "the thing speaks for itself." THE LAW OF TORTS 243 (W. Page Keeton, ed., 1984). Under this doctrine, an injured party argues circumstantially that the defendant caused their injury because it was caused by "an agency or instrumentality within the exclusive control of the defendant," in this case the correction officers who Shirback would have the court infer were under the "exclusive control" of Lantz and Correa. Id.

The type of evidence Shirback offers does not suffice to establish supervisory liability under this Circuit's case law.[5] Evidence that demonstrates only that Shirback's rights were violated is insufficient to indicate that Lantz or Correa "knew or should have known" about such violation. Poe, 282 F.3d at 141. Shirback points to no evidence

---

[5] The court notes that the cases Shirback cites address municipal liability, not individual liability, for failure to train or supervise. See Pl.'s Mem. at 9 (citing e.g. Amnesty America v. Town of West Hartford, 361 F.3d 113, 127 (2d Cir. 2004) and Walker v. City of N.Y., 974 F.2d 293, 297 (2d Cir. 1992)). The cases Shirback cites derive from the Supreme Court's decision in City of Canton v. Harris, 489 U.S. 378, 390 (1989). In City of Canton, the Supreme Court held that a municipality may be liable under section 1983 for failure to train employees where "in light of duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." Id. It appears to the court that the standard for "deliberate indifference" as an element of a claim for municipal liability is the same as the standard for "deliberate indifference or gross negligence" as an element of a claim of personal liability. See id.; Poe, 282 F.3d 123 at 140.

8

based on which a reasonable trier of fact could conclude that either Lantz or Correa had actual notice of Shirback's condition or lack of treatment (for example, complaints from him or awareness that NHCC guards had deprived inmates of proper medical treatment in the past), or that they had constructive notice of it (for example, a duty to inquire as to Shirback's health).  See id.  While evidence that correction officials told Shirback's wife that an inmate had to "hit the floor" before he would receive medical treatment may have established liability against that officer, it gives a reasonable jury no basis from which to conclude that Lantz or Correa knew or should have known about any violations. Furthermore, no reasonable trier of fact could conclude, based on Shirback's evidence, that any action or inaction on their parts "caused" his injury.  Id.

**V.     CONCLUSION**

Shirback has put forth no evidence from which a reasonable trier of fact could conclude that Lantz or Correa was personally involved in any violation of Shirback's constitutional rights.  Therefore, Defendants' Motion for Summary Judgment (Doc. No. 19) is GRANTED.  The clerk is directed to close the case.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 28th day of March, 2008.


                         /s/ Janet C. Hall
                         Janet C. Hall
                         United States District Judge